Slip Op. 04 - 111

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - - x

RAOPING XINGYU FOODS CO., LTD.,             :

                              Plaintiff,    :

              v.                            :

UNITED STATES,                              :    Court No. 02-00550

                              Defendant,    :
              -and-
                                            :
COALITION FOR FAIR PRESERVED MUSHROOM
TRADE,                                      :

              Intervenor-Defendant.         :

- - - - - - - - - - - - - - - - - - - - x

Memorandum

[Plaintiff's motion for judgment on the
 agency record denied; action dismissed.]

Decided:  August 31, 2004


       DeKieffer & Horgan (John J. Kenkel and J. Kevin Horgan) and Lee & Xiao (Yingchao Xiao) for the plaintiff.

       Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (A. David Lafer); and Office of Chief Counsel for Import Administration, U.S. Department of Commerce (Peter J.S. Kaldes), of counsel, for the defendant.

       Collier Shannon Scott, PLLC (Michael J. Coursey and Adam H. Gordon) for the intervenor-defendant.


       AQUILINO, Judge:  According to the Trade Agreements Act of 1979, as amended, in determining whether foreign merchandise is being, or is likely to be, sold in the United States at less than fair value, a comparison shall be made between the export (or con-

structed export) price and "normal value."  19 U.S.C. §1677b(a).

And when such merchandise is produced in a nonmarket-economy

country, the act authorizes the International Trade Administration,

U.S. Department of Commerce ("ITA") to

> determine the normal value of the subject merchandise on
> the basis of the value of the factors of production
> utilized in producing the merchandise . . .. [T]he valu-
> ation of the factors of production shall be based on the
> best available information regarding the values of such
> factors in a market economy country or countries consid-
> ered to be appropriate by [it].

19 U.S.C. §1677b(c)(1).  The list of those factors in the statute

includes "amounts of energy and other utilities consumed".  19

U.S.C. §1677b(c)(3)(C).  And the act further provides:

> (4) Valuation of factors of production
>
>      The [ITA], in valuing factors of production under
> paragraph (1), shall utilize, to the extent possible, the
> prices or costs of factors of production in one or more
> market economy countries that are--
>
>           (A) at a level of economic development
>      comparable to that of the nonmarket economy
>      country, and
>
>           (B) significant producers of comparable
>      merchandise.

19 U.S.C. §1677b(c)(4).

I

The complaint filed in this action alleges that the

above-named plaintiff is a privately-held company organized under

the laws of the People's Republic of China ("PRC"), which country is still considered to have a nonmarket economy. See, e.g., Coalition for the Preservation of American Brake Drum & Rotor Aftermarket Mfrs. v. United States, 28 CIT ___, 318 F.Supp.2d 1305 (2004). Certain mushrooms produced and preserved there and exported to the United States have become subject to an ITA antidumping-duty order published at 64 Fed.Reg. 8,308 (Feb. 19, 1999). The petitioner for that relief, the above-encaptioned intervenor-defendant herein, requested an agency administrative review of exports of such merchandise subject to that order emanating from some 28 named PRC enterprises, including the plaintiff company now at bar.

That process resulted in a weighted-average dumping margin for it of 161.57 percent for the period of review ("POR") per the ITA's Certain Preserved Mushrooms From the P[RC]: Final Results of Third New Shipper Review and Final Results and Partial Rescission of Second Antidumping Duty Administrative Review, 67 Fed.Reg. 46,173, 46,175 (July 12, 2002). The plaintiff seeks relief from this determination via a motion for judgment upon the record compiled by the agency in connection therewith.

The court's jurisdiction to hear and decide this motion that has been proffered pursuant to USCIT Rule 56.2 is based upon 28 U.S.C. §§ 1581(c), 2631(c).

A

The sum and substance of plaintiff's complaint is that the ITA

> used a surrogate value for the wrong type of fuel in calculating the dumping margin for Raoping. Raoping argued and submitted supporting data for Commerce to use a value for the actual type of fuel it uses, namely "heavy" fuel oil. Rather, Commerce decided to use a value for "furnace oil," a different product. Such an apples-to-oranges comparison is unsupported by substantial evidence on the record and otherwise not in accordance with law.

Count I, para. 13. Its motion takes the position that the otherwise-not-in-accordance-with-law element of the court's standard of review per 19 U.S.C. §1516a(b)(1)(B)(i) governs relief in this matter in that the "use of a value for a factor of production not utilized by Raoping Xingyu is unlawful", to borrow the words (but not the printed emphasis) of its statement of the sole issue, plaintiff's memorandum, page 1.

Of course, counsel must recognize that the resolution of an issue of law often depends on the underlying facts. Here, they include ITA issuance to Raoping Xingyu of a dumping questionnaire on or about March 30, 2001, section D of which, pursuant to 19 U.S.C. §1677b(c)(1), _supra_, was concerned with the company's factors of production. Part IIA thereof, for example, requested a "description of . . . [it]s productional process for the merchandise under consideration" to include:

> . . . 5.   . . . **all** inputs used to produce the merchan-
> dise . . ., including specific types of raw materials,
> labor, energy, subcontractor services, research and
> development, *etc*.

Boldface in original.  The court has reviewed *in camera* Raoping

Xingyu's initial response[1] to that part of the agency's question-

naire and found reference to many such inputs, including, for

example, electricity[2], water[3], and coal[4], but no reference to the

input, liquid fuel, still at issue.  A subsequent response on be-

half of the company and "its supplier Raoping Yucan Canned Foods

Factory . . . submit[ted] minor corrections to Raoping Yucan's

factors of production data."[5]  Among other things, that submission

refers to "industrial heavy oil"[6].

That submission was followed by an ITA letter to company

counsel, apprising them of the agency's "first resort to the use of

publicly available published information from surrogate countries"

and offering an "opportunity to submit any such information which

they believe the Department should consider when valuing the

factors of production".  Defendant's Memorandum, Appendix 3, p. 1.

---

[1]  Defendant-Intervenor's [Confidential] Response Brief, Appendix 3.

[2] See id., pp. D-17 to D-18.

[3] See id., p. D-18.

[4] See id., pp. D-18 to D-19.

[5] Ibid., Appendix 4, first page.

[6] See, e.g., id., fifth page.

Counsel were thereafter admonished by the ITA for "deficiencies, omissions and areas where further clarification is needed"[7] purportedly found in the Raoping Xingyu response(s) to its questionnaire. Whatever the precise nature thereof, the court has reviewed the company's response[8] to that agency letter dated October 3, 2001 and its responses[9] to supplemental ITA questionnaires[10]. The responses dated January 11, 2002 and May 10, 2002 each have line items labelled "Heavy Oil". The January 11 submission explains that, once washed and then sliced, Raoping's mushrooms are blanched in a stainless steel tank heated by steam produced by a boiler, which burns "heavy oil". Plaintiff's [Confidential] Memorandum, Appendix 4, eighth page, para. 3.

The ITA's <u>Preliminary Results</u> of its administrative review, which were published at 67 Fed.Reg. 10,128 <u>et</u> <u>seq</u>. (March 6, 2002), stated, in pertinent part, that, to

> value furnace oil, we used price data contained in Hindustan Lever Limited's . . . 1999-2000 financial report because no other data was available from the other financial reports on the record.

67 Fed.Reg. at 10,132, col. 2. The reference to that firm in India was the result of the agency's reaffirmance of its position that

---

[7] Defendant's Memorandum, Appendix 5.

[8] Defendant-Intervenor's [Confidential] Response Brief, Appendix 5.

[9] <u>Id</u>., Appendix 14; Plaintiff's [Confidential] Memorandum, Appendixes 4, 5.

[10] Defendant's Memorandum, Appendixes 7, 10.

the PRC continue to be treated as a nonmarket-economy country[11] and

its determination that

> India is among the countries comparable to the PRC in
> terms of overall economic development . . .. In addition,
> based on publicly available information placed on the
> record, India is a significant producer of the subject
> merchandise.  Accordingly, we considered India the pri-
> mary surrogate country for purposes of valuing the fac-
> tors of production because it meets the Department's
> criteria for surrogate country selection.

Id. at 10,131, col. 3.


This selection precipitated the filing of a case brief

with the ITA on behalf of Raoping, to wit:


> The furnace oil that Hindustan Lever used is of
> different quality from the heavy fuel (which was trans-
> lated literally into "heavy oil" in Raoping's question-
> naire response) that Raoping used for its canned mushroom
> production during the POR.  First, the huge difference
> between the prices of Hindustan Lever's and Raoping's
> fuel indicates that the qualities of the two fuels are
> different.  We understand that as in a non-market econ-
> omy, Raoping's fuel price cannot be used for such a
> comparison.  However, the heavy fuel price that the
> Department used for China in a different proceeding is
> just a fraction of that of Hindustan Lever's furnace oil.
> . . . [T]he only heavy fuel price . . . used was in the
> Persulfates case (A-570-847), which is $0.12337 per
> kilogram.  In the current review the furnace oil that the
> Department used is USD 0.45 per kilogram, 3.6 times of
> that in the Persulfates case, and it is even more ex-
> pensive than the diesel oil which is a purer and better
> quality fuel than heavy fuel.  . . . The dramatic dif-
> ference of the prices indicates that the two fuels are of
> different quality.  The heavy fuel that Raoping used is
> the last residual of oil refining process and it was so
> cheap that Raoping actually reduced its production cost
> by using it.  . . . Raoping's boiler is also specially
> designed to use cheap fuel.  While we have no information

---

[11] See 67 Fed.Reg. at 10,131, col. 3.

in the record regarding how and for what products . . .
Hindustan Lever used the furnace oil, we know that canned
mushroom is a small portion of Hindustan Lever's produc-
tion, and it is very likely that Hindustan used the fuel
in the production of the products that require a higher
quality oil.  Even [if] Hindustan Lever uses the furnace
oil for its canned mushroom production, it may be of a
higher quality and more efficient oil than that of Rao-
ping's.  Before we know that the two fuels are of similar
quality, using . . . Hindustan Lever's oil price to
calculate Raoping's cheap heavy fuel cost is not proper.
For these reasons, we urge the Department to find a sur-
rogate price of a fuel that is close to what Raoping used
during the POR, or continue its past practice to use the
heavy fuel price in the Persulfates case with adjust-
ments.

Plaintiff's Memorandum, Appendix 6, third-fourth pages (citations

omitted).  This plea was rejected by the ITA in its Issues and

Decision Memorandum as follows:

. . . First, we find that the price of Hindustan's fi-
nancial report is more contemporaneous to the POR than
the price from Energy, Prices and Taxes.  In addition,
after examining information contained in Hindustan's
financial report, we find no basis which supports Raoping
Xingyu's contention that the furnace oil Hindustan uses
is not comparable to the furnace oil Raoping Xingyu uses
in its production process. The mere fact that there is a
difference in the price of furnace oil contained in
Hindustan's financial report and in Energy, Prices and
Taxes does not necessarily indicate that there is an
issue with regard to the quality of the furnace oil
contained in either resource, especially when one
recognizes that the price from Energy, Prices and Taxes
is at least four years older than the price from Hin-
dustan's financial report.  Absent any supporting docu-
mentation or resources, we find that we cannot agree with
Raoping Xingyu's claim that it uses furnace oil which is
vastly different from that used by Hindustan.  Thus, we
are continuing to value this input using data from
Hindustan's financial report.

Id., Appendix 3, pp. 6-7. The agency's subsequently-published Final

Results that are now before the court adopted this reasoning.  See

67 Fed.Reg. at 46,175, col. 1.

B

That adoption, and that of defendant's counsel in their memorandum, pages 9-10, seem somewhat incongruous.  If the court's understanding is correct that *Energy Prices & Taxes* is a continuing, quarterly publication of statistics by the Organisation for Economic Cooperation and Development's International Energy Agency ("IEA"), then Hindustan Lever's past fuel prices are not "more contemporaneous to the POR than the price from Energy, Prices and Taxes."  Ibid.  Indeed, independent of the IEA, the U.S. government is or should be awash in oil data gathered and published by its own Energy Information Administration.

Be that as it may, the ongoing, world-wide phenomenon that is the flighty pricing of petroleum in all of its combinations and permutations has made contemporaneity a most-fleeting element of any related equation.  Spot price is what counts.  In this matter, however, as the court reads the record, the plaintiff failed to proffer any price paid for, or understood-grade of, its fuel oil.[12]  Belatedly, it pleaded for reference, as quoted above, to an oil factor listed in the ITA's Index of Factor Values for Use

---

[12]  Its counsel concede the timely "opportunity to submit any such information which they believe the [ITA] should consider when valuing the factors of production".  Plaintiff's Memorandum, p. 10, quoting Appendix 8 thereto, p. 1.  Cf. Tianjin Machinery Import & Export Corp. v. United States, 16 CIT 931, 936, 806 F.Supp. 1008, 1015 (1992)("the burden of creating an adequate record lies with respondents and not with Commerce"), citing Chinsung Indus. Co. v. United States, 13 CIT 103, 705 F.Supp. 598 (1989).

in Antidumping Duty Investigations Involving Products from the P[RC]: Memorandum from Richard Moreland to All Reviewers (April 1997). Cf. Plaintiff's Memorandum, Appendix 6, Exhibit 1, p. 2. While that factor may well have been of moment during the period indicated, October 1994 to March 1995, to require the ITA now to resort thereto would reduce the requirement of 19 U.S.C. §1677b(c)(1) of "the best available information regarding the values of such factors" to a degree certainly not contemplated by Congress or countenanced by the courts. Given the record, such as it is herein, this court cannot find that the Hindustan Lever data are not the best available, nor can this court conclude that the agency's reliance thereon was not in accordance with the law recited hereinabove.

II

In view of the foregoing, plaintiff's motion for judgment upon the agency record must be denied and this action dismissed. Judgment will enter accordingly.

Decided:  New York, New York
          August 31, 2004

                                    Thomas J. Aquilino, Jr.
                                             Judge